UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

COLUMBIA PARK GOLF COURSE,
INC., a Washington
corporation,

                    Plaintiff,

          v.

CITY OF KENNEWICK, a
municipal corporation in and
for the State of Washington;
JAMES R. BEAVER, Mayor of
Kennewick; ROBERT HAMMOND,
City Manager of Kennewick;
and JOHN S. ZIOBRO, City
Attorney for Kennewick,

                    Defendants.

NO. CV-07-5054-EFS

**ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT, GRANTING AND DENYING
IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
FEDERAL CLAIMS, AND GRANTING
AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT RE: CONTRACT CLAIMS**

        Before the Court, without oral argument, are Plaintiff Columbia Park

Golf Course's (CPGC) Motion for Partial Summary Judgment Re: Violation

of 42 U.S.C. § 1983 (Ct. Rec. 66); Defendants City of Kennewick, James

Beaver, Robert Hammond, and John Ziobro's (hereinafter, collectively

referred to as "Defendants") Motion for Partial Summary Judgment on

Federal Claims (Ct. Rec. 79); and Defendants' Motion for Summary Judgment

Re: Contract Claims (Ct. Rec. 82).    After reviewing the submitted

material and relevant authority, the Court is fully informed and denies

CPGC's motion and grants and denies in part Defendants' motions.    The

reasons for the Court's Order are set forth below.

ORDER * 1

**A.    Uncontroverted Facts**

Columbia Park is a municipal park located in the City of Kennewick ("the City") between the south bank of the Columbia River and State Route (SR) 240, generally west of the SR 395 bridge.  Columbia Park is owned by the United States and is administered by the Corps of Engineers ("the Corps").  Initially, the Corps leased Columbia Park to Benton County, which in turn subleased to the City that portion of Columbia Park within the City's boundaries.  On March 26, 2004, the Corps leased the portion of Columbia Park within the City's boundaries to the City directly.

On March 21, 2000, CPGC's predecessor in interest[1] and the City executed the Columbia Park Golf Course Lease Agreement (hereinafter, referred to as "the sublease") for the golf course property located within Columbia Park.  The Corps approved the sublease on April 14, 2003, CPGC's predecessor in interest and the City executed an addendum to the sublease.  The Corps approved this addendum.

CPGC[2] and the City entered into a Development Option Agreement (CPGC DOA) on April 16, 2005.  On October 20, 2005, CPGC submitted its Shoreline Management Permit to the City.  The application contained an initial site plan, which included replacing the driving range with an RV park and replacing the club house (hereinafter, referred to as "the RV project").  On May 2, 2006, the City Council approved CPGC's application with Resolution 06-14.

---

[1]  Prior to 2004, CPGC was named Golf Universe, Inc., Golf Universe Management, Inc., and Solaris, Inc.

[2]  CPGC is a corporation organized and existing under Washington laws and doing business in Benton County.

ORDER * 2

In the fall of 2005, Aaron Beasley with the Three-Rivers Sports Facility (TRSF) approached the City and proposed developing a multi-purpose community center within Columbia Park. TRSF met with City officials on November 7, 2005. On February 21, 2006, the City and TRSF entered into a Development Option Agreement (TRSF DOA).

CPGC filed this lawsuit in state court, and Defendants removed the action on February 27, 2007. (Ct. Rec. 1.) CPGC contends the City breached the CPGC DOA by entertaining the TRSF's project and by disallowing the RV project to be located at the golf course. CPGC contends Defendants' conduct also supports claims under 42 U.S.C. § 1983, a breach of the implied covenant of good faith and fair dealing claim, a promissory estoppel claim, and an unjust enrichment claim. Defendants oppose CPGC's claims. The parties filed the instant motions in December 2007 and early 2008.

**B.   Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some

ORDER * 3

1  metaphysical doubt as to material facts.  In the language of [Rule 56],

2  the nonmoving party must come forward with 'specific facts showing that

3  there is a *genuine issue for trial.*'"  *Matsushita Elec. Indus. Co. v.*

4  *Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted)

5  (emphasis in original opinion).

6      When considering these motions for summary judgment, the Court did

7  not weigh the evidence or assess credibility; instead, the Court viewed

8  the evidence and all justifiable inferences in the light most favorable

9  to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

10 242, 255 (1986).  This does not mean that the Court accepted as true

11 assertions made by the non-moving party that are flatly contradicted by

12 the record.  *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).  Because

13 both parties filed motions for summary judgment, the Court, when

14 addressing a specific issue, viewed the evidence in the favor of the non-

15 moving party on that particular issue.

16 **C.    42 U.S.C. § 1983**

17     Both parties seek entry of judgment in their favor on CPGC's 42

18 U.S.C. § 1983[3] substantive due process claim.  In addition, Defendants

19 ask the Court to enter judgment in their favor on CPGC's procedural due

20

21     [3]  Section 1983:

22     Every person who, under color of any statute, ordinance,
       regulation, custom, or usage, of any State or Territory or the
23     District of Columbia, subjects, or causes to be subjected, any
       citizen of the United States or other person within the
24     jurisdiction thereof to the deprivation of any rights,
       privileges, or immunities secured by the Constitution and laws,
25     shall be liable to the party injured in an action at law, suit
       in equity, or other proper proceeding for redress. . . .
26

42 U.S.C. § 1983.

ORDER * 4

process, equal protection, and impairment of contract claims brought under § 1983.  To prove a violation of § 1983, CPGC must establish two elements: (1) a person acting under color of law (2) deprived CPGC of rights guaranteed by the United States Constitution.  42 U.S.C. § 1983.

It is undisputed that Defendants acted under color of law.[4]  Whether CPGC presented sufficient evidence to survive summary judgment on its substantive and procedural due process, impairment of contracts, equal protection, and conspiracy to violate equal protection claims is addressed below.

1.  Standing

First, the Court addresses Defendants' argument that CPGC lacks standing because its interests are based on contract and not land ownership.  In order for a case or controversy to exist that creates Court jurisdiction, CPGC must have standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 569 n.4).  A litigant must establish injury in fact, causation, and redressability.  *Lujan*, 504 U.S. at 560.  "Injury in fact" requires "an invasion of a legally-protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.; see also N.E. Flor. Chapter of Assoc. Gen.*

_____

[4]  For purposes of § 1983, the City, as a municipality, is a "person." *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Defendants Mayor James Beaver, City Manager Bob Hammond, and former City Attorney John Ziobro were at all material times City officials.

ORDER * 5

*Contractors. of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993). Upon review of the Complaint, the Court concludes CPGC alleged sufficient facts to establish a redressible injury in fact proximately caused by Defendants. Accordingly, the Court finds CPGC has standing.

    2.    Substantive Due Process

    To prove a violation of a substantive due process right, CPGC must establish (1) the deprivation of a protectible property interest (2) by means that were arbitrary and capricious. *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994); 1 Civ. Actions Against State & Loc. Gov't 7:38 (2008). Defendants contend that CPGC cannot satisfy either of these requirements and, additionally, argue that CPGC's substantive due process claim is trumped by the Fifth Amendment takings clause.

        a.    Fifth Amendment

    The Court finds CPGC's substantive due process claim, if successful, is not barred by the Fifth Amendment in light of the Ninth Circuit's recent decision *Action Apartment Association v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2007). In *Action Apartment Association*, the Ninth Circuit stated, "An arbitrary deprivation of [a landowner's constitutionally protected property interest], thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action." *Action Apartment Ass'n*, 509 F.3d at 1026. Although CPGC is a leaseholder and not a landowner, the Court determines the Takings Clause does not preclude CPGC's substantive due process claims. Accordingly, the Court addresses the merits of CPGC's substantive due process claim below.

ORDER * 6

            b.   Protectible property interest

     To have a substantive due process claim, a plaintiff must be deprived of a "particular quality of property interest." *Indep. Enterps., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179-80 (3d Cir. 1997) (declining to define the "precise contours of the 'particular quality of property interest' entitled to substantive due process protection"). "A mere 'unilateral expectation' of a benefit or privilege is insufficient; the plaintiff must 'have a legitimate claim of entitlement to it.'" *Nunez v. City of L.A.*, 147 F.3d 867, 872 (9th Cir. 1998). The substantive interest may be created by the Constitution or by state law; however, federal constitutional law determines whether that interest rises to the level of a "legitimate claim of entitlement." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see Mid-Am. Waste Sys. v. City of Gary, Ind.*, 49 F.3d 286, 290 (7th Cir. 1995). A property interest arises where the government lacks discretion in granting or recognizing the interest at issue. *Wedges/Ledges of Cal.*, 24 F.3d at 62.

     CPGC asserts its protectible property interest is created by Washington's vested rights doctrine. The vested rights doctrine states that a successful permit applicant has the right to develop the property consistent with the codes and ordinances in effect at the time of the permit application. *W. Main Assoc. v. City of Bellevue*, 106 Wn.2d 47, 50 (1986); *Talbot v. Gray*, 11 Wn. App. 807, 811 (1974) (citing *Eastlake Cmty. Council v. Roanoke Ass'n, Inc.*, 82 Wn.2d 475 (1973)); *Hull v. Hunt*, 53 Wn.2d 125, 130 (1958). Relying on the vested rights doctrine, CPGC argues it has a vested interest to pursue the RV project at the golf

ORDER * 7

1   course location, absent violating the Kennewick Municipal Code, based on
2   its Shoreline Management Permit.  The Court concludes otherwise.

3          CPGC's rights to occupy and use the golf course property are based
4   on the sublease.  The parties disagree as to whether the CPGA DOA and the
5   Shoreline Management Permit amended the sublease's requirement that CPGC
6   operate a driving range.  Yet, it is undisputed that the Corps is not a
7   party to the CPGC DOA and did not participate in approving the Shoreline
8   Management Permit.  Accordingly, Columbia Park's owner - the United
9   States - did not authorize CPGC's RV project.  Therefore, even though the
10  City Council issued the Shoreline Management Permit, the Court finds
11  CPGC's claimed right of pursuing the development outlined in the permit
12  is not a legitimate claim entitled to protection under the due process
13  clause.  *C.f. 3883 Conn., LLC v. D.C.*, 336 F.3d 1068, 1074 (D.C. Cir.
14  2003) (no dispute that builder had right to build on that property).

15             c.   Arbitrary and capricious

16         Because the Court concludes CPGC does not have a protectible
17  substantive due process interest to pursue developing its RV project at
18  the golf course location, the Court need not address whether Defendants'
19  decision to discontinue the RV project at the golf course location was
20  arbitrary and capricious.

21             d.   Conclusion

22         Although the Court finds CPGC's substantive due process claim is not
23  barred by the Fifth Amendment, summary judgment in Defendants' favor on
24  the substantive due process claim is appropriate because CPGC does not
25  have a protectible property interest.  Accordingly, CPGC's motion is
26  denied and Defendants' federal claims motion is granted in part.

3.   Procedural Due Process

Two elements must be established to prove procedural due process violation: (1) the existence of an interest protected by the due process clause and (2) the inadequacy of the procedures provided. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 527 (1999).  Because the Court concluded that CPGC does not have a protectible due process interest to pursue developing its RV project at the golf course location, the Court grants Defendants' motion as to the procedural due process claim.  *See Indep. Enterps.*, 103 F.3d at 1179-80.

4.   No Impairment of Contract

Article I, § 10 of the U.S. Constitution states, "No State shall . . . pass any . . . law impairing the obligation of contracts . . . ." A governmental entity does not unconstitutionally impair a contract if it takes a measure that leaves the other party with a breach of contract damages remedy; rather, a claim exists under Article I, § 10 only if the governmental entity extinguishes the contract remedy. *Hays v. Port of Seattle*, 251 U.S. 233 (1920); *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248 (7th Cir. 1996).  For the reasons discussed below in connection with Defendants' contract-related dispositive motion, the Court finds triable issues of fact exist as to whether the Defendants' actions extinguished CPGC's contract remedy.  Defendants' federal claims motion is denied in part.

5.   Equal Protection

The Equal Protection Clause requires that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Constitution Amend. XIV § 1.  There are two types of equal protection claims.  First, the plaintiff may allege that "defendants

ORDER * 9

1  acted with an intent or purpose to discriminate against the plaintiff
2  based upon membership in a protected class." *Barren v. Harrington*, 152
3  F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S.
4  229, 239-40 (1976)); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167
5  (9th Cir. 2005). Second, the plaintiff can establish an equal protection
6  "class of one" claim by alleging that it "has been intentionally treated
7  differently from others similarly situated and that there is no rational
8  basis for the difference in treatment." *Vill. of Willowbrook v. Olech*,
9  528 U.S. 562, 564 (2000). CPGC's equal protection claim is the latter.

10     CPGC contends it is the only developer who received a shoreline
11 permit and was not allowed to construct its project in the last five
12 years. Assuming this is true, the Court concludes CPGC failed to
13 establish a triable issue of fact as to whether Defendants lacked a
14 rational basis for not allowing CPGC to continue its RV project at the
15 golf course. Without commenting upon the appropriateness of the City
16 Council's ultimate decision, the Court concludes it was rational for the
17 City to consider public opinion in selecting the RV park's location.
18 "[T]here is nothing unusual or untoward in local government officials'
19 responsiveness to public opinion." *3883 Conn., LLC*, 336 F.3d at 1074.

20     6.    Conspiracy to Violate Equal Protection
21     Because summary judgment in Defendants' favor is appropriate on
22 CPGC's equal protection claim, the Court also dismisses CPGC's 42 U.S.C.
23 § 1985(3) conspiracy to violate equal protection claim.

24     7.    Estoppel and Accord and Satisfaction
25     The Court need not address Defendants' equitable estoppel and accord
26 and satisfaction arguments because the Court resolved the § 1983 claims
   involving these doctrines in Defendants' favor.

ORDER * 10

8.  <u>Conclusion</u>

CPGC has standing to assert its federal claims. However, absent the impairment of contract claim, Defendants are entitled to summary judgment in their favor on CPGC's substantive due process, procedural due process, equal protection, and conspiracy to violate equal protection claims. Accordingly, CPGC's motion is denied, and Defendants' federal claims motion is granted and denied in part.

**C.  Defendants' Motion for Summary Judgment Re: Contract Claims**

Defendants ask the Court to enter summary judgment in their favor on all of CPGC's claims that "sound in contract" because CPGC cannot prove the necessary elements of these claims. CPGC opposes the motion, contending summary judgment is precluded due to the disputed material facts. As explained below, the Court dismisses the promissory estoppel claim but finds triable issues of material fact exist as to the other contract-related claims.

1.  <u>Breach of Contract</u>

CPGC is not arguing the City breached the sublease; rather, CPGC argues the City breached the CPGC DOA by entertaining TRSF's development proposal and precluding CPGC from proceeding with its RV project at the golf course location.

A cause of action for breach of contract requires (1) a valid contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Lehrer v. DSHS*, 101 Wn. App. 509, 516 (2000). Damages must be proximately caused and flow naturally from the breach. *Lincor Contractors, Ltd v. Hyskell*, 30 Wn. App. 317, 321 (1984).

It is undisputed that the CPGC DOA is a valid contract. The dispute centers around whether the City breached the CPGC DOA and, if so, whether

ORDER * 11

CPGC incurred any damages resulting from the breach.  The CPGC DOA, in pertinent part, states:

> The City shall:
>
> A. During the term of this agreement, refrain from making further requests for proposals for development of a recreational vehicle park, shoreline improvements, and boat moorage within Columbia Park.
>
> B. Shall not entertain or negotiate any alternate proposals for development of a recreational vehicle park, shoreline improvements, and boat moorage within Columbia Park during the term of this Agreement.
>
> C. Timely process all applications, permit requests, plan reviews, and Site Plan approvals submitted by the *Developer* in pursuit of this project.

(Ct. Rec. 89 Ex. C (emphasis in original.))  The City contends it did not breach the CPGA DOA because (1) it did not entertain a proposal for development of a RV park, shoreline improvements, *and* boat moorage within Columbia Park because the TRSF proposal did not include all three of these items and, even if it did include these items, the City did not entertain TRSF's proposal and (2) it did not restrict CPGC from going forward with its obligations under the CPGC DOA.

        a.    TRSF proposal

        Defendants argue the use of the conjunctive language - "and" - in the CPGC DOA indicates that the proposal must have included all three items in order for the City to breach the CPGC DOA.  The Court disagrees, finding there is no ambiguity in this portion of the CPGC DOA.  The CPGC DOA's purpose was to grant CPGC "an exclusive option for the development of a recreational vehicle park, shoreline improvements[,] and boat moorage within Columbia Park."  (Ct. Rec. 89 Ex. C.)  The City's entertaining of even one of these development projects would defeat the purpose of this exclusive option agreement.  Therefore, if the City

ORDER * 12

entertained a proposal to develop an RV park *or* shoreline improvements *or* a boat moorage, the City would breach the CPGC DOA.

Next, the Court concludes CPGC presented sufficient evidence to establish a genuine issue of material fact as to whether TRSF's proposal included an RV park, shoreline improvements, and/or boat moorage. City employee Bill King sent an email on November 7, 2005, regarding the TRSF proposal and stated that the proposal included, amongst other developments: a riverboat casino, boardwalk, cruise ship dock, and an RV park; this email was circulated to a number of City employees, including Bob Hammond. (Ct. Rec. 112 Ex. A.) Mr. Hammond responded that it "sounds appropriate" for the City's joint-council committee to look at the TRSF proposal. *Id.* Cindy Cole testified at her deposition that she informed Mr. Beasley at the November 7, 2005 meeting that the City would not entertain a proposal for an RV park. (Ct. Rec. 86 Ex. 2.) However, Ms. Cole's deposition testimony did not indicate whether she also told Mr. Beasley that the City had entered into an exclusive agreement regarding shoreline improvements and boat moorage with another entity. *Id.* In addition, CPGC presented evidence that the TRSF proposal continued to include these sorts of developments following the November 7, 2005 meeting. (Ct. Rec. 112 Ex. B.) Plus, the Court notes the February 21, 2006 TRSF DOA granted TRSF "an exclusive option for the development of a multi-purpose community center within the western portion of Columbia Park" and did not reference that this multi-purpose community center development could not include an RV park, shoreline improvements, or boat moorage. (Ct. Rec. 38 Ex. E.) Accordingly, the Court finds triable issues of fact exist as to whether the TRSF proposal included an RV park, shoreline improvements, and/or boat moorage.

Defendants argue that any conflict between the CPGC DOA and the TRSF DOA must be resolved in favor of the City because these two options were prepared by the same law firm.  Defendants cite to *Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 666 (2003), and *Hill v. Department of Labor and Industries*, 90 Wn.2d 276, 279 (1978), to support this argument.  In *Hill*, the Washington Supreme Court recognized that "[k]nowledge by the attorney is imputed to the client."  This is true; however, Defendants have only claimed that the same *law firm*, not the same attorney, drafted the DOAs.  (Ct. Rec. 126 ¶ 18.)  Accordingly, the Court does not have sufficient evidence that the same attorney prepared the DOAs, or represented both CPGC and TRSF.  In *Sandstone*, the Washington Supreme Court commented upon an attorney's responsibility to inform his client as to the legal effect of a document.  148 Wash. 2d at 664.  Even if the same attorney prepared the DOAs, the City failed to explain how that attorney would have an obligation to notify the City of the conflict between the two documents.  TRSF's obligations under its DOA did not expose it to liability against CPGC; rather, it was the City that was potentially in a precarious position by entering into two DOAs.

The next question is whether the City entertained the TRSF proposal.  The City contends the TRSF did not have specific development plans.  However, the broadly-worded CPGC DOA restricted the City from "entertain[ing] or negotiat[ing] any alternate proposals for development of a recreational vehicle park, shoreline improvements, and boat moorage . . . ."  (Ct. Rec. 89 Ex. C p. 2.)  The Court finds CPGC presented sufficient evidence to establish triable issues of fact as to whether the City entertained or negotiated any alternate proposals for development of an RV park, shoreline improvements, and boat moorage.

ORDER * 14

Defendants contend, regardless of whether a breach occurred, CPGC's breach of contract cause of action must be dismissed because CPGC failed to present sufficient evidence that it incurred damages that were proximately caused by the TRSF proposal. A prevailing party is entitled to recover those damages that will put it in the position it would have been in had the contract been performed. *Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 46 (1984). Because of the synergistic-financial relationship between the golf course, RV park, and club house restaurant, the Court finds it is a question for the jury whether CPGC's claimed lost income is proximately caused by Defendants' alleged breach.[5]

For the above reasons, Defendants' motion to dismiss CPGC's breach of contract cause of action related to the TRSF proposal is denied.

    b.  CPGC DOA vitality

Defendants also argue the City did not breach the CPGC DOA when it disallowed the RV project at the golf course because the CPGC DOA did not guarantee final project approval. As explained below, the Court agrees to the extent that the CPGC DOA did not guarantee final project approval of an RV park at the golf course; however, the jury is to determine whether Defendants' conduct violated the implied covenant of good faith and fair dealing.

The CPGC DOA did not set forth a specific location for the RV park within Columbia Park; rather, the CPGC DOA required CPGC to:

---

    [5]  If the City is found to have materially breached the CPGC DOA, this breach suspended CPGC's obligations under the CPGC DOA. *See Highlands Plaza, Inc. v. Viking Inv. Corp.*, 72 Wn.2d 865, 876-77 (1967).

ORDER * 15

A. Provide a development plan to the *City*, working with the *City* staff, appropriate agencies and commissions to submit for permitting, a project Site Plan.

B. Pursue during the term of this Agreement, Site Plan approval from all required agencies.

C. Upon final Site Plan approval, construct the development in accordance with the approved Site Plan and specifications.

(Ct. Rec. 89 Ex. C (emphasis in original.)) Therefore, the location of the RV park was to be selected through the Site Plan.

CPGC satisfied obligation "A" by submitting a Shoreline Management Permit application to the City. The application was presented to the City Council through Resolution No. 06-14. Resolution No. 06-14 states:

The application has required a Shoreline Management Permit for renovations to the Columbia Park Golf Course with the addition of an RV Park/Campground. The work will be to replace an existing 4,000 square foot clubhouse with a new 6,000 square foot clubhouse, add two new pavilions, restroom/shower facilities, and recreational vehicle and automobile parking spaces.

(Ct. Rec. 67 Ex. C.) The minutes from the May 2, 2006 City Council Meeting indicate that a similar oral description of the project was given during the meeting. (Ct. Rec. 78 Ex. 1.)

Defendants argue the City Council members approved Resolution No. 06-14 because they believed passage did not equal final approval of the RV project at the golf course. (Ct. Rec. 122: Beaver Decl.; Ct. Rec. 123: Moak Decl.; Ct. Rec. 124: Parrish Decl.; Ct. Rec. 125: Parks Decl.) The voting City Council members declared that they relied upon CPGC's counsel Lee Kerr's silence following the City staff members' statements that revising the sublease was not before the Council at that meeting, but rather would be addressed later. The City Council members also state that they relied upon Mr. Kerr's statement that the Council was not to determine at that meeting whether the RV project was at the best

ORDER * 16

location.[6]  Yet, the express language of Resolution No. 06-14, and the

oral summary, stated that the RV project was to occur at the golf course.

After reviewing all of the submitted evidence, the Court finds triable

issues of material fact exist as to what the City Council members'

intended by approving Resolution No. 06-14.[7]  *See Anderson Hay & Grain*

---

[6]    The Court finds Mr. Kerr's "wise project" or "best location"

statements were taken out of context. Mr. Kerr's statement was:

> Now the planning commission had a very, very limited scope and
> that's what you're doing, you're looking at their very limited
> scope that the planning commission had and that is is [sic]
> under our shorelines management ordinance which mirrors the
> state statute and the determination is whether this is a
> substantial development which will materially interfere with
> the normal public use of the adjacent waters and shorelines and
> so the question is not if this is a good project or not even
> is this [sic] at the right location, but whether or not this
> project is, as represented to you, will substantially or
> materially interfere with the existing public use of its
> shorelines and as you can see, the planning commission I think
> looked probably more to the wisdom of the project and I think
> as you can see there are a number of different opinions on
> whether or not this is a wise project or this is the best
> location for this project and I think rather than looking at
> the scope of the particular question that they were charged
> with, and that same question is present before the Council, I
> think they it literally [sic] looked and decided the wrong way.

(Ct. Rec. 78 Ex. 1 p. 16.)

[7]  Defendants argue, because of Mr. Kerr's statements and omissions

at the hearing, CPGC should be equitably estopped from arguing that the

passage of Resolution 06-14 consistuted final RV project approval.  The

Court concludes the jury should hear this evidence to determine whether

equitable estoppel applies.  *See Shows v. Pemberton*, 73 Wn. App. 107,

110-11 (1984); *McDaniels v. Carlson*, 108 Wn.2d 299, 308-09 (1987).

ORDER * 17

*Co. v. United Dominion Indus.*, 119 Wn. App. 249 (2003) (noting that what the parties intend is a question of fact).

If the jury finds that the City Council understood that Resolution No. 06-14 granted CPGC permission from the City to replace the driving range with an RV park, the Court concludes, as a matter of law, that approving Resolution No. 06-14 did not remove the requirement that the sublease be amended and approved by the Corps. CPGC failed to submit any evidence that the CPGC DOA and Shoreline Management Permit removed the sublease's requirement that the Corps approve any lease in connection with Columbia Park property. (Ct. Rec. 38 Ex. A ¶ 2.9; Ct. Rec. 87 Ex. 3 ¶ 13.a.) Therefore, passing Resolution No. 06-14 did not constitute "final approval" of the RV project. Accordingly, the City did not breach an express term of the CPGC DOA when it prevented the RV project from being located at the golf course location.

Nonetheless, the City was contractually obligated to abide by the agreed upon terms in the CPGC DOA. If the jury concludes that the City Council understood that Resolution No. 06-14 was to develop an RV park at the golf course location, then the City and CPGC agreed upon a "Site Plan." Therefore, although Defendants' post-May 2, 2006 conduct did not breach a specific section of the CPGC DOA, the jury could determine this conduct constituted bad faith as explained below.

c.    Implied Covenant of Good Faith and Fair Dealing

An implied covenant of good faith and fair dealing is part of every contract. "This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). Therefore, "[w]here the terms of a contract are literally complied with but one party to the

contract deliberately contravenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. ButchLewis Prods.*, 107 Nev. 226, 232-34 (1991).

The City had an obligation to carry out its contractual obligations in good faith and to deal fairly with CPGC. The purpose of the CPGC DOA was to allow CPGC the exclusive right to pursue the described development project consistent with the agreed upon Site Plan. If the jury finds that the parties agreed upon a Site Plan, then the jury must then determine whether Defendants' post-May 2, 2006 conduct breached the duty of good faith and fair dealing. In addition, triable issues of fact exist as to whether Defendants breached the implied covenant of good faith and fair dealing by entertaining TSRF's proposal.

d.   Accord and Satisfaction

Defendants contend CPGC's claims are barred by accord and satisfaction because the City extended the CPGC option and the parties' continued lease negotiations following the City's decision to not proceed with the RV project at the golf course location. To constitute a binding accord and satisfaction there must be (1) a bona fide dispute, (2) an agreement to settle that dispute and then (3) performance of that agreement. *Eagle Ins. Co. v. Albright*, 3 Wn. App. 256, 271 (1970). The Court finds CPGC presented sufficient evidence and create a genuine issue of material fact that the parties did not reach an agreement to settle their dispute regarding the location of the RV park. Defendants' motion is denied in part.

///

ORDER * 19

2.    Promissory Estoppel

Defendants maintain that the relationship between the parties is governed by contracts and, therefore, CPGC cannot bring a promissory estoppel action.  The Court agrees; because the parties' relationship is governed by the sublease, the CPGC DOA, and the Shoreline Management Permit, CPGC's promissory estoppel cause of action is dismissed.  *See Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984); *Klinke v. Famous Recipe Fried Chicken*, 94 Wn.2d 255, 261 n.4 (1980).

3.    Unjust Enrichment and Quantum Meruit

Defendants argue CPGC cannot prove unjust enrichment because CPGC did not confer any benefit on the City, other than its contractually-obligated performance.  Although the Complaint seeks recovery under both unjust enrichment and quantum meruit, Defendants' motion only referenced unjust enrichment.  However, in light of the recent Washington Supreme Court decision, *Young v. Young*, 191 P.3d 1258 (Wash. 2008), the Court discusses both claims and concludes that CPGC cannot pursue either unjust enrichment or quantum meruit.

CPGC cannot pursue unjust enrichment because the parties' relationship is governed by contract.  *See id.* at 1261-62.  Although quantum meruit possibly could be pursued even though the parties entered into a contract, CPGC cannot pursue quantum meruit because the Complaint does not allege that CPGC engaged in extra work outside of the contract.  *See id.*  Accordingly, the Court finds CPGC may not pursue either unjust enrichment or quantum meruit;  Defendants' motion is granted in part.

4.    Conclusion

Triable issues of material fact exist as to whether the City breached the CPGC DOA, breached the covenant of good faith and fair

ORDER * 20

dealing implied in the CPGC DOA.  The Court dismisses CPGC's promissory estoppel cause of action and unjust enrichment and quantum meruit claims. Accordingly, Defendants' Motion for Partial Summary Judgment on Contract Claims is granted and denied in part.

For the above given reasons, **IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Partial Summary Judgment Re: Violation of 42 U.S.C. § 1983 **(Ct. Rec. 66)** is **DENIED.**

2.  Defendants' Motion for Partial Summary Judgment on Federal Claim **(Ct. Rec. 79)** is **GRANTED** (due process claims; equal protection claims) **and DENIED** (standing and contractual interference claim) **IN PART.**

3.  Defendants' Motion for Summary Judgment Re: Contract Claims **(Ct. Rec. 82) GRANTED** (promissory estoppel, unjust enrichment, and quantum meruit) **and DENIED** (breach of contract; breach of the implied covenant of good faith and fair dealing) **IN PART.**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this ___5th___ day of November 2008.


_____S/ Edward F. Shea_____
EDWARD F. SHEA
United States District Judge


Q:\Civil\2007\5054.msjs.wpd

ORDER * 21